This docket is clause number 17-51030, United States of America v. Gabriel Alvarado-Palacio. Is the appellant ready to proceed? Yes. You may. May it please the court, Kristen Kimmelman for Gabriel Alejandro Alvarado-Palacio. Mr. Alvarado asked the court to vacate his drug conviction because it is based on statements that were obtained from him in violation of his Miranda rights. The waiver of those Miranda rights was not valid, not knowing, intelligent, or voluntary. Now, Miranda requires a full understanding of those rights, and this includes being clearly informed that he has a right to consult with an attorney and to have that attorney present with him during interrogation. Mr. Alvarado was informed of those rights at the beginning of the interrogation, which is on DVD recording, but within the first three minutes of that interrogation, Mr. Agent Hernandez essentially unread those rights to Mr. Alvarado because Mr. Alvarado was looking at the Miranda form, reading those rights, and then an agent asked, Are you understanding them? And he said, Yes, that I may have an attorney. That's what it says. And Agent Hernandez responded, Yes, you can have an attorney, but now is when we can speak with you. And that's a true statement because he had just 10 seconds earlier handed in the Miranda waiver, right? So I watched the video in where he signs the waiver, and he signs the waiver, and then after he signs the waiver, he says, Complete correct, right? That is, like, he needs to sign all of the little things. He says, Yes. Then he says, Do you understand? He says, Yes. He says, Now you're understanding them. Yes. Now, he's already signed the waiver and handed the waiver back to the agent. Right. But the waiver itself in that form, the signature on it, isn't enough to say it was knowing and valid waiver. First off, the agent instructed Mr. Alvarado to sign the form without any sort of explanation that signing the form meant he's waiving it. And so Mr. Alvarado starts signing the form, and that goes on for several seconds of him signing it, and then Agent Hernandez starts to take the form away, and Mr. Alvarado keeps it. But again, at this point, at this point, he is now – I mean, again, I watched it, right? So the first three minutes of this 23-minute video is them having a colloquy about his rights. It's first read to him in Spanish, given him the form. He reads through the form. Then they talk about how to sign it. They have a brief little colloquy about the date. Is it the 27th? Is it the 29th? Then he signs it. Then he asks, Is he signing it correctly? For three minutes, they're going back and forth about signing the form. He's read it. Even after that, he sits and reads it again, right? I mean, for folks who have looked at Miranda videos, one, having the video is obviously invaluable. Two, they're having a three-minute colloquy about the way – and you're not saying anything prior to the signature is – makes this involuntary and not knowing, right? It's your – the whole argument on behalf of the appellant is after the signature, after reading it again, after handing it back to the agent, that's what vitiates it? Yes, because he didn't make any statements that were incriminating until after all of that happened. And so in order for the government to prove a valid Miranda waiver, the government has to prove that he was warned, that he understood those warnings, and then he gave an uncoerced statement. And the government can't meet that burden in this case because the warnings, under the totality of the circumstances, were incorrect. There is conflicting information about whether he could have an attorney present during interrogation or whether that was just the time for the agents to speak with him and he could get an attorney later. But you agree that if he waives his Miranda rights, it is now time for the government to speak to him. The government can't speak to him after he's waived his Miranda rights. If he knowingly and voluntarily waived those rights, what – But signing the waiver, there's no argument that he was not knowingly and voluntarily signing the waiver form when he signed the waiver form, right? What I understood you say earlier to my question was the knowing and the nonknowing and nonvoluntary nature of this comes from the question after he signed it, after he read it a second time, and after he handed it back to the agent. That's where it suddenly becomes unknowing and involuntary. So I am not agreeing that the signature was knowing and valid voluntary waiver of the Miranda rights because he was instructed to sign this form and he did so without reading it in the video. And it's only – and that's after asking do you understand them. Do you understand your Miranda rights is different than do you waive them. And that's what the signature on the form was indicating. But the waiver itself says he's doing the waiving, right? The waiver says I'm waiving my Miranda rights. And it says at the top, renuncio. That's the name of the form. The whole reason to read it and sign it is because you're waiving. Right. But still, signing that form has to be knowing and voluntary. And putting that all on the seconds in which he was handed the form to sign after the agent said do you understand that, I need your signature on this form, that does not, under the totality of some circumstances, make a knowing and voluntary waiver, especially when coupled with his actions immediately after that were to read the form. That's what he did immediately after he signed it, per the agent's instructions, was to spend 15 seconds trying to understand what it is he had just signed. I've seen cases that involve non-knowing and involuntary Miranda issues where the circumstances giving rise to either the coercion or the misunderstanding of the rights arise prior to the waiver. But I'm not familiar, and I'm wondering if you have a case, where something that is waived becomes an involuntary and unknowing waiver by circumstances after the signature on the form. So under Burgess, Miranda, the waiver doesn't happen until he talks. And that doesn't happen until after he was instructed that now is the time we get to talk with you. And so all of the circumstances leading up to that are part of this understanding of the waiver and then whether there is an uncoerced statement at the end of that. How significant was his comment about a lawyer after he had signed? How significant was that? So we aren't arguing that he invoked counsel. So that's not the argument under Davis. We're saying that he understood the form to say that he has the right to an attorney, and that's right. Whether that's a question or a statement, it indicates that that's what he understood. Then the agent followed that up by saying, yes, you have a right to an attorney, but now is when we speak with you. And I believe that's the more significant part of this interaction between Mr. Alvarado and the agent was the agent's incomplete, incorrect explanation of those rights. And then to follow that up by Agent Hernandez talking about the importance of speaking to them right then, because there would have been an opportunity to clarify Agent Hernandez's statement during that time. But instead, Agent Hernandez says it's really important that you talk with us. Now is the time to fix this. And I watched the video. You don't think it matters whether or not Mr. Alvarado's words were a statement or a question when he said, yes, that I may have an attorney? You don't think that was a question? I think it is a question. And it's a question to which he got an incorrect response, isn't it? Correct. All right. Correct. That is our argument. The district court misinterpreted that also. Right. And I believe that was clearly erroneous, saying that it wasn't a question. Certainly Agent Hernandez understood it to be a question because he responded to that question with an answer, an incorrect answer that incorrectly explained his Miranda rights. Is it your position that your client did not say the word disay at the end of his sentence, whether it's a sentence or a question? No, I believe he did. He did say that word. Okay. And that means it says. Yeah. Right. So he asks the question that the form says I get an attorney. Uh-huh. Right. And so we're all on the same page. There seems to be an error in the unverified transcript. And the district court found, as a matter of fact, that he uses the words it says. The word disay is missing, at least from the copy that I have that appears on page 57 of the record. The word disay is missing in the Spanish. You're correct about that at record 98. But it is in the English. So the English is correct. That's what it says. The English is correct. Got it. So he says it says I can have a lawyer. I'm sorry. I can have a lawyer it says, which, of course, is true. The form does say that. And it's also true that we can speak to you now because you literally just signed a waiver. And, I mean, there's nothing incorrect about the statement that the officer made, right? There is something incorrect because it certainly implies, if not explicitly states, that we get to speak with you now absent anything else. And I understand your position to be that he had just signed a waiver. But signing a waiver, I think it's North Carolina every butler, is not enough. You have to look at the entire interaction. And you have a 23-year-old Mexican citizen who has never had any sort of criminal experience who is in this interrogation room with the agents. And he says he understands. And they ask, can we speak with you? Are you okay with that? He says, I am okay. They tell him to sign this form. He signs the form. And then, you know, maybe it took him a minute to think, now I need to really understand what's going on. And he takes the time to read that form. And that was after he signed the waiver. So I would argue that taking the time to read the form after you signed it indicates you did not understand what you were signing before you had actually read it. But I thought it was read to him in Spanish. It was read to him in Spanish, but not the waiver part. He wasn't told that what you are signing is the waiver. But it was read to him in Spanish. Then it was handed to him in writing. Then he read it. Then he signed it. Then he reread it. I disagree. I'm sorry. Which part? He did not read it before he signed it. He signed it, then read it. Well, I mean, they handed it to him. He looked at it. I mean, I watched the video just like you did. You're just saying he didn't read it. If he read it, it was very short. It was not like the 15 seconds he spent reading it after he signed the waiver. If he read it, he reads very fast. Right. And given how long it took him to even sign his name on that form, I would, you know, think that that indicates that he didn't fully read that form before signing it. But, of course, the district court found that it's knowing and voluntary, right? So you have a huge burden on appeal because you have to show that the finding of fact and the way that the district court understood the video is clearly erroneous. So I disagree with that standard of proof. I believe it is a mixed question where you apply clearly erroneous to findings of fact and de novo to findings of law. And we have a video here. I think it's hard to say that there are disputed facts. And so the standard is going to be de novo review. I know that there are cases from the Fifth Circuit that talk about clearly erroneous standard. But in those cases, there were actual factual disputes. Was the defendant inebriated or was he not? Was the defendant roughed up by the agents or was he not? And those factual disputes were under the clearly erroneous standard. But the ultimate question of whether or not that what happened made the waiver knowing and voluntary under Miranda, I believe, is de novo. And so some cases out of this court that one case out of this court that I think support this, our argument is Dome where the magistrate's advisal of the warnings of the ability to remain silent and have counsel present were very confusing. And the Fifth Circuit found that that was not a knowing waiver of it. And then, of course, the briefs rely also on the Eleventh Circuit case of Hart where the agent's statement of honesty won't hurt you, the Eleventh Circuit held was contradictory to the advisal and right that any statement you make can be held against you. And so in those cases, the incriminating statements were excluded properly. The government focuses on some Fifth Circuit cases, De La Rosa and, I believe, Sofar v. Cockrell, where there were statements by the agents that the defendants tried to say linked the right to some future point in time. And the Fifth Circuit did not think that that explanation of the right was contradictory to the right. That's different than here. We get to talk to you now. Also, those defendants had criminal experience. It was not their first time in the justice system, again, taking the totality of the circumstances. And they had been instructed I think both four times what their Miranda rights were and in one case had actually already given some waivers. And so that wasn't sufficient in those. But that's different than our situation here. A young, not criminally experienced individual living in Ciudad Juarez who comes into El Paso and has read his rights and then essentially unread them by the agent's statement that he could have an attorney, but now is when we get to talk with you. And if there are no other questions, then I have reserved time for rebuttal. All right. Thank you, counsel. Appellee. May it please the Court. The district court correctly denied appellant's motion to suppress his interrogation statements made to the agents because he knowingly and voluntarily waived his Miranda rights. The record here fully supports the district court's finding that he understood his rights and that he voluntarily waived them. I know you guys have seen the video and the transcript. He says, I'm going to inform you of your rights, and then in relevant part he says, you have a right to an attorney before you answer questions. You have a right to an attorney during the interrogation. And if you choose to answer any questions now, you have the right to stop the interrogation and consult an attorney. After he reads them, those rights, on the DVD you can see he then kind of leans in a little closer to the appellant and he's holding the form. And he repeats that last statement, and he makes it clear again. If you choose to answer any questions now, you still have the right to consult an attorney. Do you understand? And the appellant said, yes. So the agent gives him the form and asks him to sign. And as he does that, the other agent in the room says, do you understand your rights? We have a few questions for you. Is that okay? And the appellant responds, yes, I am okay. So the agent asks him to sign it, and he does it. And as he's doing it again, the other agent says, and you could read these for yourself as well, which he does, and on the video it shows him taking the form and reading it. And in 15 seconds, Judge, you referred to as quickly, but the waiver is literally one sentence. I understand these rights, and I am willing to talk and answer questions without a lawyer. That's what the waiver says. You could read that in 15 seconds. And then he gives it to the agent. And while he's handing the form back and nodding his head, the agent said, do you understand for the third time? And he responds, yes, that I can have a lawyer. That's what it says. So you disagree that he asked a question? You think he made a statement at that point? Well, the district court found he made a statement, and that is a factual finding that I believe is certainly plausible and line of the record if we can disagree. So your answer is you're not saying it wasn't a question, but the district court said it wasn't a question. Right, and I'm going to say that even if it was a question, that the answer that the agent gave was correct and accurate. Yes, you can have a lawyer, or you can choose to talk to us. I mean, that's really the choice that every ---- But we can talk to you now, something like that. Well, no, and that's a little tricky. I wanted to point out that I felt like it was twisted a little bit sometimes in her brief about what was said. The answer was, yes, you may have an attorney, but right now is when we can speak with you. He did not say that the agents get to speak with you now without an attorney present or that you get an attorney later. In her brief, I think on page 7 of the reply brief, she says that he was explained that he could have an attorney later and that the agent said that they could speak with him without an attorney. That is not what he said. That could be what he implied, but the statement was you may have an attorney, but right now is when we can speak with you. And, again, there's no attorney in the room, right? There's just the three of them. So if he asks for an attorney, the questioning is going to end. They can't talk to him until his attorney shows up. So I don't think that that statement is incorrect or misleading. Well, but I want the whole statement because he begins his statement with the word yes. Isn't that right? His response to Mr. Alvarado is yes, you may have an attorney, which would suggest to me that what he heard was a question, and he was giving a response to a question. And his response is yes, you may have an attorney, which is correct, but then he says but right now is when we can speak with you. And you don't think that's at least misleading? I don't think it's misleading in the sense that it contradicts the Miranda warnings to make it invalid, the waiver, and the court suggests so. Well, can I get you to agree with me that when he says yes, it sounds just like he's answering a question? He says yes, you may have an attorney. Okay. And, again, I will not concede that, obviously, because the district court didn't. The district court didn't. It wasn't. And I do think reasonable minds could differ on that. I am not, I would not say it absolutely was a question. But, again, I'm not sure it really matters because if it was a question, I think he did answer it, and he didn't answer it in a way that directly contradicted his Miranda rights. And I do want to point out the de la Rosa case. It's very similar. The defendant argued that although he received proper Miranda warnings, the officer's additional comments were confusing. And the court said, we can't accept the proposition that would have us ignore the accurate warnings to focus only on the remark that appointing an attorney would take some time. That's what was said there. They said the effect of the Miranda explanations were such that the defendant knew what he was giving up. That reasoning is applicable here. That one repeated, after the repeated warnings, that one statement is not enough to render his whole waiver invalid. And in an en banc case, Sofort v. Cockrell, it's also in my brief, same sort of thing. He gets the full Miranda. He starts asking questions. How would I get a lawyer? How long would it take? The agent says an appointed lawyer could take months. And this court found that was misleading. And, in fact, it was deceptive. The agent knew it wasn't going to take months. Even so, they found that that wasn't enough to invalidate the Miranda warning, that you have to look at the totality of the circumstances. And, again, you look at the totality of the circumstances here. He waived his Miranda rights. His rights were read to him fully in Spanish. He read the rights to himself. He signed the waiver form. The waiver form said, I am willing to answer questions without the presence of a lawyer. His decision to answer the agent's questions was uncoerced. He knew he could request a lawyer at any time. And, as the court also found in its ruling, he agreed to talk to the agents. The totality of the circumstances dictate, in this case, that the waiver was valid. Case law supports it. And I don't think there were any findings that the court made that we would say were clearly erroneous. Are there any further questions from the court? All right. Thank you, Counsel.  Roboto. Thank you, Your Honors. Just to point out again for De La Rosa and Sofar, in the totality of the circumstances, those both involved experienced criminal defendants. In De La Rosa, he was actually asked if he wanted an attorney. Can't get much clearer than that, that an attorney is available during interrogation if you're asked that. Of course, Mr. Alvarado was never asked that. And in Sofar, this court found that that statement by the agent was not deceptive or was deceptive but not to the point of invalidating the waiver. In doing so, it acknowledged that a deceptive comment by the agent that deprived someone of essential knowledge of those Miranda rights would invalidate the waiver. And that is what we have here because of the sequence of events and the agent's comments answer to Mr. Alvarado's question about whether the rights meant he could have an attorney. If that's right, he said yes, but right now is when we can speak with you. And that certainly implies, if not makes clear, that they could talk to him regardless right there. Certainly, excluding those statements here would serve the purpose of the exclusionary rule, which is to make sure that the law enforcement officers are following the law and properly advising people of Miranda rights and knowingly make those waivers. And that did not happen here, and so exclusion of that evidence is appropriate because even though the agent read him his rights, he then unread him those rights. And those contradictory instructions didn't clearly inform Mr. Alvarado of his right to counsel and interrogation. And under these circumstances, the government can't bear its burden, and we ask that this court vacate and remand with instructions to the district court to disregard that evidence. Were the stipulated facts at trial based solely on the confession? There were other facts in the stipulation, but the district court did not indicate in any way that the other facts would have supported the guilt beyond a reasonable doubt. And I don't believe they would have. The circumstantial evidence was that he was a car mechanic from Juarez going to El Paso to buy a car part and couldn't name what car part he was going to buy, and then they found the drugs in the hidden compartment in the vehicle that he was driving. And so the district court relied on the statements that he made after this interaction with the agents in order to find him guilty. Thank you. The court will take this matter under advisement.